NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12452

F.K.  vs.  S.C. (and a consolidated case[1]).


Essex.    October 4, 2018. - January 31, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Cypher, JJ.


Civil Harassment.  Harassment Prevention.  Protective Order.


Complaints for protection from harassment filed in the Lawrence Division of the District Court Department on March 17 and 20, 2017.

A hearing to extend harassment prevention orders was heard by Sarah Weyland Ellis, J., and a motion for reconsideration was heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Lisa S. Core for S.C.


GAZIANO, J.  The plaintiffs and the defendant were seniors at the same high school when the defendant created a rap song in which he improvised lyrics pertaining to the plaintiffs.  Some

---

[1] M.D.  vs.  S.C.

of the lyrics referenced violence that the defendant stated that he wanted to inflict on M.D., whose name was mentioned in the song. Other lyrics described acts of sexual violence that the defendant stated he wanted to inflict on an unnamed woman; in context, F.K. understood that the lyrics referred to her. The defendant posted the song on a public Internet website, and then posted a link to the song on a social media website. The plaintiffs ultimately sought harassment prevention orders, pursuant to G. L. c. 258E, § 3 (a), against the defendant, and a District Court judge issued the requested orders.

A harassment prevention order may issue under G. L. c. 258E, when a defendant has committed "[three] or more acts" of "[h]arassment." See, e.g., G. L. c. 258E, § 1. The judge found that, in posting the song, the defendant had committed at least three individual acts of harassment against M.D. and F.K. Because we conclude that the defendant's conduct amounted to only one act of harassment, the harassment prevention orders must be vacated and set aside.

We note, however, that a single act of harassment may be sufficient for a civil injunctive order issued pursuant to a court's equity jurisdiction. The plaintiffs here did not seek such relief.

1.  Background.  a.  Facts.  The facts are essentially undisputed, and were described in detail in the District Court judge's memorandum of decision.

Although the parties were seniors at the same high school, the defendant "barely" knew the plaintiffs.  During their junior year, the defendant and M.D. were in one class together, but rarely spoke to each other and had no contact outside of class.  Thereafter, until the defendant posted the song almost a year later, M.D. and the defendant had not interacted with one another.  They had no friends in common, and they moved in different social circles.  Indeed, M.D. asserted that the defendant had no reason to harbor any ill will against him.  During their sophomore year, the defendant had been in one class with F.K.  According to F.K., she had had no other contact, or history of conflict, with the defendant over the almost two years before the defendant posted the song at issue here.

On an evening in March 2017, the defendant posted a song to "SoundCloud."  SoundCloud is a public Internet website on which members can post songs and albums; the postings then become accessible to other SoundCloud members.[2]  The song at issue consisted of an instrumental track overlaid by the defendant's "freestyle" rap, i.e., unwritten lyrics that the defendant

---

[2] See https://soundcloud.com.

improvised as he sang.  Also that evening, the defendant "linked" the song from SoundCloud to his "Snapchat" account. Snapchat is a social media website on which a member may share information with a network of "friends."[3]  The defendant shared the song with at least six other high school classmates, who were members of the defendant's Snapchat "friend" network.  He did not share the song directly with M.D. or F.K.

The defendant's song was titled "Callin' Out Pussies in the School."  It contained many innocuous lyrics, such as, "I'm happy now and all you can do is frown, ya"; "I'm gonna soar like a bird, I'm go high it's time for me to roar, ya"; "Maybe go fly, pack my bag and set up into the world, ya"; and "'bout to go to college and explore the world, ya."  The song also contained negative references to M.D. by name:  "You're a pussy just like [M.D.], ya, ya."  Although not explicitly naming M.D., other sections of the song also appeared to reference M.D. Rather than simply insulting remarks, some of those lyrics appeared to contain direct threats.  For example, the defendant sang, "I don't know what you are talkin' about, talking shit in . . . class"; "I'm gonna fuck you up soon"; "I'm gonna blow your fuckin' brains out soon"; and "I'm takin' your family down one by one, boom."  The song also contained references to an

---

[3] See https://www.snapchat.com.

unnamed woman described as "your girlfriend" and "your bitch."
These lyrics appear to have been references to M.D.'s girl
friend, F.K., and both of the plaintiffs understood them as
such.[4]  The lyrics also contained profane and violent language
that appeared to suggest rape or sexual assault.  In particular,
several stanzas included the following:  "Makin' your bitch
sittin' and stayin' on her knees, ya I like bitches on her
knees"; "Then she gonna suck my D until she bleeds, ya"; and
"Soon to be I'm gonna sit your bitch down in the fuckin' lobby."

On the same evening that the song was posted to Snapchat, a
number of M.D.'s friends, all students at the same high school,
informed him about the existence of the song.  They sent M.D.
electronic text messages that instructed him to listen to the
song on SoundCloud.  M.D. did so.  Shortly thereafter, his
father listened to the song, as did F.K.[5]

---

[4] The motion judge heard testimony from M.D. and F.K. that a
high school resource officer informed F.K. that the defendant
previously had told that officer that the song's lyrics
pertained to F.K.  The defendant did not object to the
introduction of this testimony.  See Frizado v. Frizado, 420
Mass. 592, 597-598 (1995), abrogated on another ground by Zullo
v. Goguen, 423 Mass. 679, 681 (1996) (in context of abuse
prevention order sought under G. L. c. 209A, "[the] rules of
evidence need not be followed, provided that there is fairness
in what evidence is admitted and relied on").  Nor has the
defendant contested that F.K. was one of the subjects of the
song.

[5] Although the defendant did not share the song with M.D.
directly, the judge found that listening to the song placed M.D.
"in fear of imminent serious physical harm."  The judge also

After receiving threats of physical violence from members of the high school hockey team (of which M.D. was a member), the defendant removed the song from the Internet approximately two hours after initially posting it.[6]

The following morning, M.D. and his parents met with the high school's principal, an assistant principal, and a resource officer. On the same day, F.K. also met with the resource officer and an assistant principal.

Also that day, the defendant met with the resource officer and an assistant principal. The defendant said that M.D. had made derogatory comments about him (had "shaded" him) during the junior year class. The defendant could not recall, however, specifically what M.D. had said. As to the song, the defendant explained that he had been freestyling, and had wanted to sound like a rapper. The defendant remembered while rapping that M.D. previously had said negative things about him in the junior year class, and then got "caught up" in the moment. The defendant acknowledged that he had "messed up," and said that he had had no intention of hurting M.D. or M.D.'s family. The defendant

---

found that the song caused both F.K. and M.D.'s father to fear for their physical safety.

[6] The judge credited F.K.'s testimony that the song remained accessible on the Internet. F.K. stated, however, that the song remained accessible only to a small group of SoundCloud members, as the result of an apparent flaw in the SoundCloud application or website, not because of any act or omission by the defendant.

asserted that he had not realized that the song would be "seriously received."

The defendant was suspended for three days and was removed from his position as captain of the school's tennis team. Based on testimony provided by an assistant principal, the judge allowed the defendant to return to school, so long as he did not initiate contact with and stayed away from the plaintiffs. The school allowed the defendant to leave class five minutes early to help him avoid contact with the plaintiffs between classes. Ultimately, however, after an "incidental" encounter in which the defendant and F.K. passed each other, without any conversation, in a stairwell of the school, the defendant stopped going to school for the remainder of his senior year; he opted to complete his coursework from home in order to avoid any possible contact with the plaintiffs.

b. Prior proceedings. On Friday, March 17, 2017, M.D. and his father sought and obtained temporary civil harassment prevention orders from the District Court, pursuant to G. L. c. 258E, § 5. The defendant was not present at the hearing. Among other things, the order as to M.D. required the defendant to stay away from the school. The defendant complied with the terms of M.D.'s order, which was to expire on March 28, 2017. On March 18, F.K. went to a police station with her mother and

obtained an emergency harassment prevention order, pursuant to G. L. c. 258E, § 6, from an on-call judge.

On March 20, 2017, the defendant filed a motion to vacate the harassment prevention orders. The plaintiffs were present at the hearing on the motion to vacate, and they opposed the motion; the motion was denied. In addition, the judge issued F.K. a temporary harassment prevention order, pursuant to G. L. c. 258E, § 5. The order required, among other things, that the defendant "remain away" from the school. This order also was set to expire on March 28, 2017. The defendant complied with the orders.

On March 28, 2017, a hearing on a motion to extend the temporary harassment prevention orders of F.K., M.D., and M.D.'s father, pursuant to G. L. c. 258E, § 3 (a), was held before a different District Court judge. All parties were present. The parties submitted exhibits, and several witnesses testified.

The judge concluded that "the individual statements within the song" constituted "separate acts" of harassment within the meaning of G. L. c. 258E, § 1, and that those lyrics were directed at M.D. and F.K. In addition, she found that the defendant's posting of the song on two Internet websites and the fact that "at least six separate individuals" had heard the song each constituted separate acts of harassment. Accordingly, the judge extended the harassment prevention orders until March 27,

2018. She modified the orders, however, to allow the defendant to attend school, so long as he remained fifty yards away from M.D. and F.K. Because the song did not contain three or more lyrics concerning M.D.'s father, the judge declined to extend the order pertaining to him.

The defendant filed a timely notice of appeal. Thereafter, he filed a motion for reconsideration or for a stay pending appeal.[7] The defendant argued that, because he had not committed three or more acts of harassment, the temporary harassment prevention orders had been improperly extended under G. L. c. 258E, § 1. In May 2017, a hearing was held on the defendant's motion for reconsideration; the plaintiffs each opposed the motion.

Following the hearing on the motion for reconsideration, the judge again concluded that the defendant had committed three or more separate acts of harassment against F.K. and M.D. She again parsed the "one song" into "individual lyrics," and found that those individual lyrics constituted at least three separate acts of harassment against F.K. and M.D. The judge also found that the defendant "engaged in a series of separate acts necessary to create," "post," and "distribute the song." In

---

[7] In the alternative, the defendant requested that the harassment prevention orders be modified to allow him to attend his high school graduation ceremony. The judge denied this request.

addition, she found that the song reached "more than three recipients" when the defendant posted it on the Internet and that M.D. received "notice of the song from at least six separate individuals."  On these bases, the judge denied the defendant's motion.  The defendant then sought an emergency motion for a stay under Mass. R. A. P. 6 (a), as appearing in 454 Mass. 1601 (2009); he requested that a single justice of the Appeals Court briefly stay the harassment prevention orders so that he would be able to attend his high school graduation ceremony.[8]  Neither M.D. nor F.K. filed an opposition.

Following a hearing at which all parties were present, the single justice determined that the plaintiffs had not demonstrated a likelihood of success that they would be able to prove three or more acts of harassment at trial, as required under G. L. c. 258E, § 1.  The single justice was "of the view that the defendant [had] demonstrated a substantial likelihood of success on the merits of his appeal, as the record [did] not suggest that the statutory requirement of 'three acts' [had] been met."  Accordingly, the single justice concluded that the defendant had demonstrated a substantial likelihood of success on the merits.

---

[8] Pursuant to O'Brien v. Borowski, 461 Mass. 415, 418 (2012), appeals from harassment prevention orders obtained under G. L. c. 258E, § 1, must be filed in the Appeals Court.

The defendant ultimately filed his appeal in the Appeals Court, and we transferred the matter to this court on our own motion.

2. <u>Discussion</u>.  The defendant contends that performing the song and posting it on the Internet constituted "[o]ne continuous act," which "cannot be parsed into individual acts in order to satisfy" the requirements of G. L. c. 258E, §§ 1 and 3 (<u>a</u>).  Neither plaintiff has filed a brief or otherwise appeared for the purpose of this appeal.  Having carefully reviewed the record, we conclude that the facts of this case do not support the issuance of civil harassment prevention orders, pursuant to G. L. c. 258E, §§ 1 and 3 (<u>a</u>).

a. <u>Statutory framework</u>.  In 2010, the Legislature enacted St. 2010, c. 23, entitled, "An Act relative to harassment prevention orders," see G. L. c. 258E, "to allow individuals to obtain civil restraining orders against persons who are not family or household members, and to make the violation of those orders punishable as a crime" (citation omitted).  <u>O'Brien</u> v. <u>Borowski</u>, 461 Mass. 415, 419 (2012), abrogated on another ground by <u>Seney</u> v. <u>Morhy</u>, 467 Mass. 58, 60 (2014).[9]

_____

[9] Although harassment prevention orders are civil in nature, violation of a harassment prevention order is a criminal offense.  See, e.g., G. L. c. 258E, § 4; <u>Seney</u> v. <u>Morhy</u>, 467 Mass. 58, 60 (2014).  Criminal sanctions imposed under G. L. c. 258E may include "a fine of not more than $5,000"; "imprisonment for not more than [two and one-half] years in a

Under certain circumstances, a plaintiff may obtain an emergency harassment prevention order pursuant to G. L. c. 258E, § 6, without first filing a complaint. When "the court is closed for business or the plaintiff is unable to appear in court because of severe hardship due to the plaintiff's physical condition," a plaintiff may obtain a temporary emergency order if the plaintiff "demonstrates a substantial likelihood of immediate danger of harassment." If physically able, the plaintiff "appear[s] in court on the next available business day to file a complaint." G. L. c. 258E, § 6. Notice then must be provided to the defendant. G. L. c. 258E, § 9.

A plaintiff also may file a complaint under G. L. c. 258E to seek one of two types of orders. See, e.g., G. L. c. 258E, §§ 3 (a), 5. First, when "the plaintiff demonstrates a substantial likelihood of immediate danger of harassment," the court may issue a temporary harassment prevention order without giving prior notice to the defendant. See G. L. c. 258E, § 5. The "appropriate law enforcement agency" then must serve the defendant with two certified copies of the temporary harassment prevention order, a copy of the complaint, and a copy of the

---

house of correction"; payment of additional fees and assessments; or completion of "an appropriate treatment program based on the offense." See G. L. c. 258E, § 9. A judge also may order that a defendant pay certain damages to the plaintiff, including attorney's fees. Id.

summons.  See G. L. c. 258E, § 9.  No later than "[ten] court business days after such orders are entered," a defendant must have an "opportunity to be heard on the question of continuing the temporary order" and a plaintiff shall have an opportunity to seek "other relief," including an extension of the temporary harassment prevention order.  See G. L. c. 258E, § 5.  Second, under G. L. c. 258E, § 3 (a), a plaintiff may file a complaint seeking a harassment prevention order that "shall not extend for a period exceeding [one] year."  See G. L. c. 258E, § 3 (d).[10]

To obtain a civil harassment prevention order under G. L. c. 258E, § 3 (a), a plaintiff must demonstrate, by a preponderance of the evidence,[11] that the defendant committed "[three] or more acts" of "[h]arassment" within the meaning of G. L. c. 258E, § 1.  See Van Liew v. Stansfield, 474 Mass. 31, 36-37 (2016).

In relevant part, an act constitutes "[h]arassment" under G. L. c. 258E, § 1, when it is "aimed at a specific person";

---

[10] A court may later extend a harassment prevention order upon motion of the plaintiff, consistent with the requirements of G. L. c. 258E, § 3 (d).

[11] Although not expressly stated in G. L. c. 258E, our prior jurisprudence indicates that a plaintiff who seeks a harassment prevention order under G. L. c. 258E, § 3 (a), must demonstrate by a preponderance of the evidence that the order is warranted. See, e.g., Frizado, 420 Mass. at 597 (plaintiff seeking civil abuse prevention order under G. L. c. 209A, "must make a case for relief by a preponderance of the evidence").  See also MacDonald v. Caruso, 467 Mass. 382, 386-387 (2014).

consists of "willful and malicious conduct" that is "committed with the intent to cause fear, intimidation, abuse or damage to property," and "does in fact cause fear, intimidation, abuse or damage to property."[12]  See G. L. c. 258E, § 1.

b.  At least three acts "aimed at a specific person."  As a threshold matter, a plaintiff must demonstrate that a defendant engaged in "[three] or more acts," each "aimed at a specific person."  See, e.g., O'Brien, 461 Mass. at 426.  One continuous act cannot be parsed into its constituent parts so as to satisfy G. L. c. 258E, § 1.  See, e.g., Smith v. Mastalerz, 467 Mass. 1001, 1001-1002 (2014).

In Smith, supra at 1001, the defendant drove his vehicle past the plaintiff, who was standing outside her house, turned around and drove by the plaintiff again, and, only a few moments later, drove past the plaintiff a third time.  The plaintiff obtained a civil harassment prevention order under G. L. c. 258E, § 3 (a), which was extended approximately one year later, pursuant to G. L. c. 258E, § 3 (d).  See Smith, supra at 1001 & n.1.  Without deciding whether the defendant's conduct rose to the level of "[h]arassment" under G. L. c. 258E, § 1,

---

[12] General Laws c. 258E, § 1, provides another definition of "harassment," not applicable to this case:  "an act that . . . (A) by force, threat or duress causes another to involuntarily engage in sexual relations; or (B) constitutes a violation of [G. L. c. 265, § 13B, 13F, 13H, 22, 22A, 23, 24, 24B, 26C, 43 or 43A,] or [G. L. c. 272, § 3]."

this court determined that "where there was no evidence refuting the defendant's claim that he lived down the street from the plaintiff, . . . driving by the plaintiff's home within a very short period of time was one continuous act."  Smith, supra at 1001.  We therefore concluded that the plaintiff in Smith had presented insufficient evidence to warrant a harassment prevention order under G. L. c. 258E, §§ 1 and 3 (a).

Of course, even where the record demonstrates three or more acts aimed at a specific person, see O'Brien, 461 Mass. at 426, those acts also must constitute "[h]arassment."  See G. L. c. 258E, § 1.  See, e.g., Seney, 467 Mass. at 63 (defendant "must willfully commit[] three or more acts aimed at a specific person, each with the intent to cause fear, intimidation, abuse, or damage to property" [emphasis in original; quotation omitted]).

c.  Analysis.  The defendant apparently concedes that posting the song on the Internet constituted harassment.  We therefore assume without deciding that posting the song on the Internet rose to the level of "[h]arassment" within the meaning of G. L. c. 258E, § 1.  The question before us, then, is whether the defendant committed three or more separate acts of harassment.  The defendant argues that he did not, and that the judge erred in issuing the civil harassment prevention orders

against him, pursuant to G. L. c. 258E, §§ 1 and 3 (a).  We agree.

i.  Individual lyrics.  To begin, we conclude, as the single justice of the Appeals Court suggested, that dividing the defendant's "one song" into many "individual lyrics" for the purpose of finding separate acts of harassment is impermissible under G. L. c. 258E, § 1.  As stated, in Smith, 467 Mass. 1001, we held that one continuous act cannot be divided into multiple discrete acts in order to satisfy the requirements of G. L. c. 258E, § 1.  We reiterate that a harassment prevention order may issue under G. L. c. 258E, § 3 (a), only on a finding of three or more separate acts of harassment.  See G. L. c. 258E, § 1.  See also Seney, 467 Mass. at 63.

ii.  Distribution.  Because a song recorded in private, without more, cannot "in fact cause" intimidation, abuse, damage to property, or fear of physical harm or damage to property, G. L. c. 258E, § 1, the defendant did not perform a separate act of harassment merely by singing or recording the song.  A recorded song may constitute an act of harassment, for the purposes of G. L. c. 258E, § 1, only when it is distributed to others.

Here, the defendant posted a single song to SoundCloud, then linked the same song from SoundCloud to Snapchat.  He did not post different songs on the Internet.

By posting the song to SoundCloud, the defendant made it available to SoundCloud members. When he linked the song to his Snapchat account, he merely reshared it with SoundCloud members who were also members of the defendant's specific Snapchat network of "friends." He accomplished the two acts in close succession, and removed the song from the Internet within two hours of initially posting it. We are satisfied that when the defendant posted the song to Soundcloud and linked it to his Snapchat account, he engaged in one continuous act. See Smith, 467 Mass. at 1001.

iii. Witnesses to the song. The fact that several people accessed the song on the Internet does not transform that single song into more than one act of harassment. Of course, the number of witnesses to an act properly may be considered in the context of determining the extent to which a defendant's actions were "aimed at a specific person" or did "in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1. In the context of G. L. c. 258E, however, a single act is not multiplied by the number of witnesses to that act. Cf. Commonwealth v. Quinn, 439 Mass. 492, 501 (2003) (in context of G. L. c. 272, § 16, act of openly and intentionally exposing oneself to multiple people constitutes single act of open and gross lewdness).

Nor did the fact that M.D. received notice of the song from multiple people constitute additional acts of harassment perpetrated by the defendant.  The record contains no indication that the defendant directed anyone to notify M.D. of the song.  Rather, M.D. was informed about the song by his friends, acting of their own volition.  Indeed, the defendant removed the song from the Internet two hours after posting it because M.D.'s friends were threatening "to beat him up."  The actions of the individuals who notified M.D. about the song are not attributable to the defendant.

The defendant's conduct, troubling and offensive as it was, failed to satisfy the threshold requirement of G. L. c. 258E, § 1, that a defendant commit at least three acts of harassment, without which a civil harassment prevention order cannot issue under G. L. c. 258E, § 3 (a).  Vacatur of the orders in this case therefore is required.  Moreover, "if a judge vacates a harassment prevention order, law enforcement officials shall destroy 'all record' concerning such order."  Seney, 467 Mass. at 60-61, quoting G. L. c. 258E, § 9.

We therefore remand the case to the District Court for entry of an order vacating and setting aside the harassment prevention orders, and for further actions required by G. L. c. 258E, § 9.

So ordered.