NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-16

L.R.

vs.

K.L.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, K.L., appeals from an abuse prevention order issued pursuant to G. L. c. 209A, § 3 (c. 209A order).  He argues that the District Court judge abused her discretion in granting the order as there was insufficient evidence to establish that the plaintiff, L.R., had a reasonable fear of imminent serious physical harm.  He also argues that the judge improperly relied on a seven year old video recording introduced by the plaintiff and should not have considered the parties' relative size and strength in reaching her conclusion.  We affirm.

Background.  "We recite the facts based on the record before us."  See E.C.O. v. Compton, 464 Mass. 558, 559 (2013).

The plaintiff and the defendant were in a dating relationship, which continued for several years after the birth of their child, who was five years old when the plaintiff filed a complaint for protection and obtained an ex parte order effective on November 7, 2024.  See G. L. c. 209A, § 4.  In support of her complaint, the plaintiff provided an affidavit averring that the defendant "stalks" her by placing global position system (GPS) trackers in her car, watching her home from a neighbor's yard, and hacking her cell phone to see her location.  The plaintiff also averred that on one occasion while the defendant was caring for their child at her home, he went through her drawers and paperwork and that he had stalked her boyfriend and "threatened to ruin his life."

A hearing to determine whether the ex parte order should be extended was held before a second judge on November 21, 2024.  Both parties were present and self-represented.  The plaintiff testified that she sought an abuse prevention order because the defendant was stalking her.  She explained that the defendant, who lived less than one mile away on the same street, repeatedly drove by her house at night, tracked her location, and followed her with his car when she was out in public.  The plaintiff also testified that the defendant had interfered with her personal life.  On November 4, 2024, the defendant contacted the plaintiff's boyfriend's wife and told her that the plaintiff was

2

involved with her husband.  According to the plaintiff, this conduct reflected a pattern of controlling behavior that the defendant had exhibited for several years.  To substantiate her claim, the plaintiff introduced a video recording that depicted an incident which had occurred approximately seven years earlier.[1]  The judge viewed the video recording and made the following comments about the contents of the recording.  The two appear to be in a small space.  The defendant looks extremely angry, the plaintiff looks fearful and is crying.  The plaintiff also testified that the same night the video recording was taken, the defendant had choked her, "toss[ed] her around," and pointed a loaded firearm at her.  In response to a question posed by the judge, the plaintiff stated that she feared for her safety and was concerned the defendant could "snap" again.

The defendant testified that the night the video recording was taken, he was drunk, suicidal, and did not remember pointing a firearm at the plaintiff.  He also testified that he no longer owned a gun and had obtained therapy, after which his mental health had improved.  The defendant then testified that he and the plaintiff had maintained a good coparenting relationship despite the end of their romantic one.  He testified that he had continued to attend holiday gatherings with the plaintiff and

---

[1] The record before us does not contain the video recording, but we note that the defendant does not dispute its contents.

3

her family over the past few years and that, just recently, he and the plaintiff had exchanged text messages and started to make plans to celebrate the holidays together. The defendant denied hacking the plaintiff's cell phone, tracking her location, and watching her from a neighbor's yard, but acknowledged that both he and the plaintiff had placed GPS tracking devices on each other's cars. The defendant also admitted that he had rummaged through the plaintiff's drawers while he was at her home caring for their child and that he had contacted the plaintiff's boyfriend's wife.

At the conclusion of the hearing, the judge specifically credited the plaintiff's testimony about the defendant's history of physical abuse and her current fear of him before ruling that the abuse prevention order would remain in effect for one year, until November 20, 2025. The judge ordered the defendant to stay away from the plaintiff's residence and stay at least 100 yards away from the plaintiff but allowed the defendant to be within three yards of the plaintiff when picking up or dropping off their child and to maintain contact via email so long as the defendant was not abusive.

Discussion. The defendant first argues that the evidence did not support the issuance of an abuse prevention order. We review the issuance of such an order for an abuse of discretion or other error of law. E.C.O., 464 Mass. at 562. "[A] judge's

4

discretionary decision constitutes an abuse of discretion where [the reviewing court] conclude[s] the judge made a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives" (quotations and citations omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

To obtain such an order, the plaintiff must satisfy both a subjective and an objective standard:  that she was currently in fear of imminent serious physical harm, and that her fear was reasonable.  See Yahna Y. v. Sylvester S., 97 Mass. App. Ct. 184, 186 (2020).  In evaluating whether the plaintiff has met this burden, the judge "must consider the totality of the circumstances of the parties' relationship."  Iamele v. Asselin, 444 Mass. 734, 740 (2005).  In addition, where, as here, the judge has not made specific factual findings on the record, we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences, that the defendant placed the plaintiff in fear of imminent serious physical harm.  See Frizado v. Frizado, 420 Mass. 592, 597 (1995); G.B. v. C.A., 94 Mass. App. Ct. 389, 396 (2018).

We discern no abuse of discretion.  The plaintiff's affidavit and testimony at the hearing established significant prior physical and verbal abuse perpetrated by the defendant. Moreover, the defendant did not deny that some of the abusive

5

conduct to which the plaintiff testified had occurred.  Given these circumstances, it was within the judge's discretion to credit the plaintiff's testimony and to conclude that the defendant's conduct caused the plaintiff to fear imminent serious physical harm.  See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006) ("We accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor,' the utmost deference" [citation omitted]).

Next, the defendant asserts that the judge erred by relying on the video recording because it concerned an incident that occurred seven years earlier.  We disagree.  "[I]n evaluating whether an initial 209A order or its extension should issue, the judge must examine the words and conduct in the context of the entire history of the parties' hostile relationship" (quotation and citation omitted).  G.B. v. C.A., 94 Mass. App. Ct. 389, 393-394 (2018).  Here, the judge acknowledged that the video recording was taken years ago but concluded nevertheless that it provided a basis for the plaintiff's current fear of the defendant.  Accordingly, we discern no error.

The defendant's final argument, that the judge improperly considered his biological sex and physical stature, is

6

unavailing for the same reason.[2]  Whether the plaintiff's fear is reasonable depends on the totality of the circumstances, of which, relative size and strength are a part.  Moreover, the judge expressly acknowledged that "smaller women can inflict great physical damage on large men," demonstrating a "thoughtful and reasoned consideration" of the evidence.  Callahan v. Callahan, 85 Mass. App. Ct. 369, 375 (2014).  In any event, even if we were to assume that the defendant is correct, there was sufficient additional evidence to support the order.[3]

Order entered November 21, 2024, affirmed.

By the Court (Vuono, Desmond & Toone, JJ.[4]),

Clerk

Entered:  November 24, 2025.

---

[2] The judge said, "I would note here, parenthetically, the relative size difference, I -- I would say, certainly, sir, you are tall, broad, seem to be a very large strong man.  I think you'd probably agree with that characterization.  And -- and [the plaintiff] is much smaller."

[3] In his brief, the defendant asks us to consider evidence that was not before the judge.  He correctly acknowledges that we may not do so, and we do not.  See Mass. R. A. P. 8, as appearing in 481 Mass. 1611 (2019).

[4] The panelists are listed in order of seniority.